Great. Council on the Talley matter. Mr. Butaro. Did I pronounce your name right, sir? You did, yes. Good morning, Your Honors, and may it please the Court. My name is Andrew Butaro, and I am here as amicus counsel on behalf of the appellant. With the Court's permission, I'd like to reserve three minutes for rebuttal. Very well. Thank you. The plain text of Section 1915G of the Prison Litigation Reform Act definitively answers the question before the Court. Under Section 1915G, a prisoner accrues a strike only if the prisoner's entire action is dismissed on enumerated grounds. A court's declining supplemental jurisdiction is not an enumerated ground. What do you make of the government's argument or the Commonwealth's argument that if we follow that path, we're kind of undermining the PLRA because anybody can tack on a state claim in an effort to avoid a strike? So I have a couple of responses to that, Your Honor. The first is that even were the strike-proofing problem as grave as government counsel warns, I would still say that we would have to interpret and apply the PLRA three-strikes rule by its plain text. But with that said, I do not anticipate that the strike-proofing problem will be nearly as grave as the briefing might have suggested. This is because district courts retain discretion to exercise supplemental jurisdiction over a prisoner's state law claims and dismiss them on enumerated grounds under the three-strikes rule. If they do so, that then brings the prisoner's state law claims within the reach of Section 1915G, and an entire action would be dismissed on enumerated grounds. But isn't that antithetical to what our case law is? Don't we discourage district courts from exercising jurisdiction over the state claims in that instance? When the federal claims are done, don't we encourage in our case law that the state claims be put aside? Your Honor, the case law reflects a general rule that has been articulated sometimes slightly differently, which I think has led to some confusion on this point. So generally, in cases like West Mifflin or Hedges, this Court says that when the claims conferring original jurisdiction for the court have been dismissed, the court should then decline supplemental jurisdiction over the remaining state law claims unless certain factors are met. And those factors in question are commonly referred to as the Gibbs factors. And so these are considerations like judicial economy, fairness to the parties, convenience to the litigants, and so on. And so what the rule and the articulation of the rule is basically establishing is that in most cases, it might make sense to decline that supplemental jurisdiction. I think it's important to note, though, in this discussion that to even step back from the judicial gloss on the statute, Section 1367 makes clear, and specifically subsection C of Section 1367 makes clear that this is a discretionary exercise. The statute starts with 1367A, which includes a threshold presumption that supplemental jurisdiction will be exercised in these circumstances. Then you jump down to Section 1367C. And if the claims conferring original jurisdiction are dismissed, then you turn to the consideration of it. But if it remains discretionary, right, then the argument that the state makes would persist, right, which would be that you could have a serial filer at a state claim. And unless the individual federal judge makes a determination that they're going to exercise their discretion, you're in the same place. Now, are you asking us to make a rule that for judicial economy or other reasons that district courts on PLRA matters must exercise their discretion? Because in the absence of that, I don't know how we solve the conundrum. So I do not think that the court needs to impose a blanket rule. I think it would be useful for the court to clarify that district courts may exercise supplemental jurisdiction if circumstances- Unclear? I think it's unclear simply because, as you mentioned, government counsel's briefing notes the imperative must that is included in some of this court's discretion of supplemental jurisdiction. So sometimes you'll see this court discuss supplemental jurisdiction as providing that a district court must decline supplemental jurisdiction unless certain discretionary factors are met. Other times this court has used may, which closely tracks the statutory language. But to your point about will the strike-proofing problem persist, the answer to that question is really in the hands of the district courts. So if a district court would prefer to decline supplemental jurisdiction over a prisoner of state law claims, then they will essentially provide that, at least in that action. That action will be strike-proofed. But if the court decides that it wants to exercise supplemental jurisdiction, that will avoid the strike-proofing problem. And I think- How would that work from a boots-on-the-ground perspective? In the district court, the individual district court would have to undertake an analysis of all the state court claims? Yes, if there are multiple state law claims in the prisoner's action. But we know that district courts sometimes do this. You know, we have pointed this out in briefing that district courts within the Third Circuit have done that on occasion.  As we think about exercising our jurisdiction as a general matter, right, whether it's PLRA or other substantive areas, we're loathe to exercise jurisdiction, supplemental jurisdiction over state claims when the federal claims are removed from the action. Hence, you know, you can exercise your discretion, but obviously in most instances you don't. So it sounds like what you're asking us to do is think of PLRA as being something different than the other substantive areas where that rule would normally apply. You'd be reluctant to exercise your discretion. In this particular instance, you should put that reluctance aside and, in fact, exercise that discretion. And I'm wondering, you know, why would we want to draw a line and treat the PLRA inherently differently than we would treat other substantive areas of law? Your Honor, I think that it would be worth treating the PLRA Three Strikes Rule slightly differently than other areas. To start with, the PLRA is an economizing statute itself, right? So it's promoting judicial economy among the courts by preventing non-meritorious litigation from going forward. And because of that, I think that the Gibbs factors that control the discretion will frequently be met in these circumstances. And I think it's important to note that actually there is agreement between amicus and government counsel on this point. At pages 29 to 30 of government counsel's brief, they offer – it's couched as an alternative argument, but they offer the observation that these Gibbs factors will frequently be satisfied in the context of prisoner litigation. Well, you just said it's a judicial economy statute, right? It's an economizing statute. So then why shouldn't we count them as strikes? I'm sorry. If the purpose is to, you know, make the most of judicial resources, right, that's the purpose of the statute, then wouldn't it make sense that we count them as strikes? If you throw the statutory text to the side and just look at the purpose, yes, absolutely. That would be the cleanest way or the most efficient way to do it, but that would be an inappropriate mode of statutory interpretation. I would submit both in terms of guidance from this court and the U.S. Supreme Court. I mean, just recently in the Lomax decision, the Supreme Court, in an opinion by Justice Kagan, said that, you know, the question in this case begins and ends with the statutory text. And I think that the same dynamic is at issue here. And so I think that just casting the statutory text aside in order to further a perceived congressional purpose, and I would emphasize perceived, I think would be a mistake. And it would be also not in keeping with not only the Lomax decision, but Coleman v. Tollefson and other decisions from this court. I do think that ultimately if the court took the purely sort of, for lack of a better term, purpose-driven, results-driven approach, or if it took the approach I'm advocating here, I don't think that the ultimate result will be all that different. It's just a matter of how we get there. And I think it is important that we get there the right way, which is being faithful to the statutory text, reminding district courts that Section 1367 provides them with discretion to exercise supplemental jurisdiction in appropriate circumstances. And that brings prisoner state law claims within the reach of the statute. And that would be consistent with the approach taken by the D.C. Circuit in the Four Star decision, taken by the Ninth Circuit in the Harris decision. And I think it's really worth noting that both those courts in those decisions completely acknowledged the strike-proofing problem, knew that it could be a cross-purposes with the legislative intent behind the statute, but also noted that supplemental jurisdiction could provide a solution to many, if not all, of the instances in which. I'd like you to speak for a moment to your adversary's principle argument, and that is that the rule should be all federal claims, full stop. That should be the definition of entire action. I understand the, you know, your principle argument is look at the language of the statute. Tell us about the practical difficulties in trying to draw the line there. Well, Your Honor, I'll start with the fact that it is reading a distinction into the text that doesn't exist. Section 1915G talks in terms of a prisoner's entire action or appeal. And it doesn't take, the statute does not take a claim-by-claim approach. It takes an overall action approach. And so the action can contain claims that are federal or, of course, in the instance we're discussing, state. And so we'd be reading in something that really isn't there. I'll also add that in the cases discussing the PLRA's concern with federal court litigation, it's really just establishing a truism when you unpack those cases and look at what they're talking about. Those cases are generally just stating the truism that the PLRA applies to prisoner suits in federal court. If a prisoner files suit in state court, then obviously the PLRA doesn't apply. So I think it would be a fairly thin read to hang on a distinction of the magnitude that we're talking about here. You mentioned LOMAX. Why shouldn't we read LOMAX? It seems like a common-sensical application here to not to hold but to suggest that in the situation we have before us, where the district court does not exercise supplemental jurisdiction over the state law claims, that is tantamount to the dismissal without leave to amend, which then gets us into the LOMAX situation. Why isn't that analogous? Your Honor, I think that it would actually be sort of looking at LOMAX in a backwards fashion. For LOMAX, the key distinction or the key turning point for the holding wasn't the nature of the dismissal itself. It was what does the plain text of the PLRA say? And so Justice Kagan noted in that opinion that Section 1915G speaks only in terms of dismissals. It doesn't specify whether the dismissal is with prejudice or without prejudice. And because of that, both types of dismissals are within the plain language of the statutory text. And so I see that my time has expired now. So unless the panel has – Oh, the red's just a suggestion, particularly when Judge McKee's here. So did you have anything further, Judge McKee? I did not, no. Well, then you are excused. Great. Thank you. Is it Scorinci? That's correct, Your Honor. All right. Very good. Thank you, Your Honor. May it please the Court, Michael Scorinci from the Pennsylvania Office of Attorney General on behalf of Appellees. Your Honors, this morning we've heard a great deal about statutory text. Statutory text is very important, but it's not the only consideration. Why isn't it? Why isn't it the only consideration where it's clear and unambiguous? Isn't that, in fact, for all of our cases, both in this Court, Supreme Court, isn't that exactly what the cases say, that where the text is clear, that is the only consideration? No, Your Honor. Even when we first look at the text, we have to consider not just the text, but also the context in which that statutory language appears, structure of the statute, and, yes, the purpose, the history, and object or policy. Tell us how we should view the two words entire action other than entire action. You know, it's got to be the first week of law school. We hear about, you know, the entire action. I see the 1Ls in the back going, yeah, that's what we did. So help us. Sure, Your Honor. Now, I know you're referring to Byrd v. Shannon, and, of course, that's what you said in Byrd v. Shannon. It was a different question, though, if you recall. It wasn't about supplemental jurisdiction. I'm speaking much more broadly than merely Byrd v. Shannon. I'm speaking those are two words, right? That's all. Let's talk about those two words in as narrow or broad a context as you'd like, because I'm trying to figure out how entire action can mean anything other than entire action, particularly the distinction that you're trying to draw there. Entire action must somehow be defined to be just all the federal claims, and I'm at a loss to how we make that. Yes. Well, Your Honor, our position is action is limited to the federal law claims, and I'll use an analogy from an en banc decision of this court written by Judge McKee, which was Voys v. Bentley. That had to do with this court's jurisdiction over certiorari petitions from the Virgin Islands, and at issue there was the meaning of cases commenced. And there, Your Honors, you interpreted cases commenced to mean not when the action is filed, but when the certiorari petition was filed, and you restrained that meaning in order to give effect to congressional purpose. You even talked about what might be absurd results from that, and that's the same interpretation I'm asking Your Honors to apply here, is to restrain the meaning of action in this particular circumstances because of the purpose of Congress being undermined. Well, that's a really interesting analogy that you bring up, right? In that case, commence is susceptible, and obviously, as it was explained in the opinion, susceptible to multiple interpretations, nuance, et cetera. Help me with action, right? So a prisoner brings an action. He doesn't bring federal claims. He brings an action. Within that action are both federal claims and state claims. So, you know, there is a bit of nuance in the case that you cited to it. How do we discern nuance from action? Action, we've proposed in our brief, would mean all the basis, the jurisdictional basis that originally lied. Once that jurisdictional basis is gone, there's no action left because all the state law claims fall out. That's how we're proposing, Your Honors, interpret action. Well, that assumes, though, the district court cannot exercise supplemental jurisdiction, and I think you argued that. But you'd agree that in certain circumstances, look at the Gibbs factors, the district court can exercise supplemental jurisdiction over the state law claims. That's correct, Your Honor, and, yes, we are assuming that, and I think reality bears that out. If we just look at this case or the many actions that Mr. Talley has brought, by my count there's 22 appeals currently pending before this court. In 19 of them, Mr. Talley has brought both state and federal law claims. In one case has he, has the district court exercised supplemental jurisdiction. One out of 19 is not much of a batting average. To use a baseball metaphor, it's below the Mendoza line. What? Mendoza line? At any rate. It's a baseball thing. I know you're a football. Mendoza's a guy who lives in the Bronx. We're going back to the Bronx. Louie Mendoza, I know Louie well. There's a little bodega on the 148th Street. He was an infielder for the Pirates. He couldn't hit much, but he could field. At any rate, Your Honor, at that rate, one out of 19, it's going to take about 60 cases for Mr. Talley to tally up three strikes. No pun intended, but why would we draw, again, I talked to your adversary about this, why would we draw a distinction between the PLRA on the one hand and other substantive areas in the other? Because if we lend this interpretation to entire action in this context, well, you know, you can rest assured that within moments, we'll get other lawsuits in other substantive areas saying, you know, judge and, you know, pick the area. The federal claims are gone. You know, the action shouldn't be here or whatever. Yes, yes, I understand, Your Honor. And our position is this gets back to congressional purpose. The purpose of the PLRA is that Congress wanted for inmates to have skin in the game. And with a state law claim, there is no skin in the game. There's no adjudication on the merits, so it can be brought again, and there's no strike call. If you contrast that with, say, a dismissal based on immunity for state law claims, well, there, there's been an adjudication on the merits, so at least there's some skin in the game. There's been an adjudication. Those claims are gone. There's no redoubling of efforts. So that's the line we would draw is, is the inmate facing some kind of consequence as Congress intended? Well, look, that would mean that we'd have to have a, I'm sorry, we'd have to assume that Congress didn't contemplate that part of the action would be state claims. And we can't assume that, right? Because when we talk about, you know, basic jurisdiction, basic, you know, what's brought in front of us and so forth, Congress is intimately and historically involved in that. So it's impossible to make that assumption. So now you want us to entomb that Congress couldn't have meant this, and they must mean in this instance this. And I don't think that works as a historical matter or a practical matter. Your Honor, we respectfully disagree for this reason. Now, 1996 was the PLRA. In 1990, the Supplemental Jurisdiction Statute was amended. And I think this Court's case law has gone a bit further than what 1367 actually says and what Gibbs interpreted. Your case law, such as Hedges and Burrough of West Mifflin, used the imperative, must. I don't think Congress anticipated that this Court would apply a stricter interpretation to that statute, where essentially supplemental jurisdiction is almost never being exercised except in a rare case. How do you square your argument with Byrd? I mean, Byrd's real clear. It says, we agree with the majority of our sister courts of appeals that Section 1915G requires that a prisoner's entire action or appeal be dismissed on numerated grounds in order for the dismissal to count as a strike. I mean, it couldn't be more clear. How do you square your position with the presidential opinion from this circuit? I think there's three ways to square it with Byrd. First, Byrd did not address this particular question. No, but they do say entire action. Yeah, absolutely, Your Honor. And I would point out that the Sixth and Tenth Circuit apply that same general rule, entire action. Yet that did not stop them from finding an exception. There's very little discussion. The Sixth and Tenth Circuit cases, it's a thin reed to cling to because there's very little discussion, almost no analysis. It's almost a hipster dixit in terms of how they reach their decision. Respectfully, Your Honor, we disagree. I think they addressed it. I know it was in the context of exhaustion, but that case turned on the purpose of the statute. In fact, in a subsequent case from the Sixth Circuit called Taylor versus First Medical Management, they said to read pointer as limited to unexhausted claims is too narrow a reading. And that would contradict the reasoning and holding of that case because it turned on congressional purpose. To return to your question, Judge Restrepo, getting back to Byrd, beside it being a different question, I think the difference there is that, if you recall, the rule was that the dismissal had to be clear. There the dismissal was without merit. And that's an unclear qualifying ground. That's something that's in the court's hands. Whereas the claims that are included in an inmate's complaint are within his hands. So there's no control over that. And I think that's one of the important differences between this court's decision in Byrd and the facts here. Can you clarify that? I don't follow that. Can you repeat that again? Well, whether the court, so the appeal in Byrd, it was a dismissal without merit. And clearly that's not one of the qualifying grounds. It has to be frivolous or malicious or failure to state a claim. And that's something that the court has control over. The court can be clearer and say it should have been a dismissal for failure to state a claim. That's something the court has control over. There's no control over what an inmate includes in his complaint. And I think that's an important difference. I think that's what Byrd turns on, that and the fact that it is a question that was not addressed in this case. And I acknowledge that it has that language. But again, I would refer to the sixth and ten circuits as still finding an exception, applying a more restrained interpretation to action to get back to again to voice, applying a restrained interpretation to give effect to congressional purpose. Boys was different because there we had a Supreme Court case that specifically defined a an appeal as being a separate case from the original action. And that's really what resolved it. We don't have that here. Yes. Yes, Your Honor. I mean, I agree. There's not a separate. There's just one case here. So I'm not sure I understood your question. If maybe. Well, I'm just saying voice is not helpful because there's a Supreme Court case that gave us what we needed. And inquiry into whether or not an appeal was a separate case apart from the initial filing of the complaint. Right. Right. Voice is different in that sense. But I think the general I'm asking your honest to play apply the same general principle from voice, which is to apply a more restrained interpretation in order to give congressional in order to give effect to congressional purpose. So in order to follow the rule that you're hoping that we apply, I take it that the the reason that if there's an exercise of discretion on a supplemental jurisdiction issue, the reason for handling it and then disposing of it, whether it be an enumerated ground, a non enumerated ground, or in fact saying there's merit and going forward in the action, as long as it's with regard to a supplemental jurisdiction, it's irrelevant to the main focus, which is entire action only is with regard to federal claims. So essentially anything having to do with state claims should be irrelevant for strike purposes, whether there's merit to the state claim or no merit to the state claim. Is that right? That's absolutely correct, Your Honor. And I'll explain to you why. So I think this is also consistent with Lomax because Lomax recalled that it was a dismissal without prejudice still counted as a strike. So there's still the opportunity for an inmate to come back, refile. And the court in Lomax didn't say that the strike would be taken back. So I think that's the same principle here. An inmate could bring state law claims, have them dismissed for supplemental jurisdiction. Even if he goes to state court and wins, we would say still a strike based on Lomax. In fact, based on Lomax, the dismissal here is actually more consequential for purposes of federal court because in Lomax, again, the case could be brought again in federal court. There's no possibility of this case being brought again in federal court because there's no basis for jurisdiction. It's as if it's a dismissal with prejudice for purposes of federal court jurisdiction. And one other point I wanted to make about Lomax is that Lomax, again, this court decided in Milhouse several years before Lomax that a dismissal without prejudice was not a strike. And then the U.S. Supreme Court, 9-0, says it is a strike. And that's based on federal judges' reasonable reading of the same statute. And I think this gets back to my ultimate point. We start out with my adversary saying it's a very clear statute, but yet we have federal judges on both sides saying, reasonably minded judges saying, I read it differently. And I think this gets back to looking at the purpose. If that wasn't the case, there would be no cases going up on appeal. You can't imagine a situation where you can't go out into the judicial universe and find judges who disagree with one another. It's always the case. Well, I think it gets back to the overarching rule of statutory interpretation. If reasonable minds can disagree, shouldn't we read the text in light of the purpose? And that's ultimately our position, Your Honor, that it's the text in light of the purpose. And in light of that purpose, it allows inmates like Talley to escape a strike call time and time again. And that's contrary to legislative intent. Absent Byrd, I think your argument has some merit to it. I think absent Byrd would have a lot more force to it than it does, given our institutional view of how we view prior presidential opinions. I understand you're distinguishing Byrd. I'm not sure I buy the distinction, but I understand what you're arguing. Understood, Your Honor. I only have a few seconds left here. So if there's any other questions, I'm happy to answer them. All right, thanks so much. Thank you, Your Honor. Your Honor, just a few brief points in rebuttal. The first is that not only does Byrd settle this issue and make clear that there's a distinction between actions and claims, Byrd's holding was reaffirmed by this court, again, in Ball v. Familio. At pages 463 to 64, it makes clear that mixed dismissals, which is exactly what we have here, cannot give rise to a strike, because it's the text that controls. So Byrd wasn't a one-off. It's been reaffirmed. And that central holding is not idiosyncratic. That is the same holding that has been reached by eight other courts of appeals that have considered the basis of what causes a strike to accrue. And two courts of appeals, as noted, have taken that to its logical extension, just taken that one baby step, and said that because supplemental jurisdiction declinations are not enumerated grounds, a dismissal that includes them cannot qualify as a strike. The second point I'd like to make is that even if the court were to delve into the legislative history and look at the purpose behind the statute, which, again, I don't think it needs to do or really should do, given the statutory clarity here, I don't think that my adversary's argument necessarily follows. There's no doubt that in acting the PLRA, Congress was concerned with reducing the burden on federal courts that were dealing with non-meritorious prisoner suits. But there's no rule of statutory construction that says you try to define a congressional purpose and then stretch it to its broadest possible construction. And I think it's important to note that while there was a lot of agreement in crafting the statute, the legislative history does show some concern with chilling meritorious suits. In fact, then-Senator Biden was one who brought up the issue of a statute that overreached, could chill meritorious litigation, and that's a serious concern. So I think that Section 1915G, like any piece of congressional legislation, reflects a balance, and that also counsels in favor of reading in exceptions to it that were never in there. And the last thing I would say is simply that, again, to return to the strike-proofing issue, district courts are watching this court on this specific issue. I know at least two district courts within the circuit have acknowledged the pendency of this appeal and the issue it's deciding. So I think, again, that suggests that a clear statement about how district courts, call it a reminder, can exercise their discretion to exercise supplemental jurisdiction over state law claims can really avoid the strike-proofing problem down the line. You mentioned purpose, and you specifically mentioned judicial economy and tied it to judicial economy of the federal courts, not courts per se. And to the extent that we look at judicial economy in terms of the federal courts taking on the burden of exercising supplemental jurisdiction, there's an economy there because you're resolving it and it doesn't go to the state courts, but that economy doesn't yield the benefit of the federal court. That just goes to the overall judicial system. So if we narrow the Gibbs consideration of judicial economy to the federal judicial economy, doesn't that undermine your argument? Because it expands on the labor of the judicial courts. It doesn't limit it. It limits the state courts' labor, but it expands on the federal court. And isn't that contrary to what Congress is trying to do, assuming we can get to the purpose in 1915G? Your Honor, if we read the text as written and we're applying it as written, it will actually promote judicial economy among the federal courts, too. And here's why. It actually will promote judicial economy in the federal courts even more, the more prolific the litigator is. So if you have federal courts that are seeing frequent filers coming in time after time, then in the short term, it will require more work on a federal district judge to exercise supplemental jurisdiction in that particular case to reach the state law claims. But in the long term, it will promote economy because, at most, the court will have to do that three times. And after it does that three times, then the next time the prisoner or litigant comes and seeks IFP status, three strikes and he's out. So it's interesting because I think that the judicial economy incentives sort of align nicely. The more prolific the litigant, the greater the burden on federal courts, and the stronger, then, the argument for any individual federal district court to exercise supplemental jurisdiction in that case to prevent that complaint from being strike-proofed. That's a good argument. I understand. Unless the panel has any additional questions, I will rest. Yes. Well, fabulous. But we do want to make sure that we thank counsel and the firm for stepping in as pro bono counsel, with the court's great appreciation. Well, thank you very much. I appreciate the opportunity. Of course. Absolutely. So thank you both, counsel, for the rigorous and interesting argument. We'll take the matter under advisement.